# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PSC INFO GROUP, : | |
|    Plaintiff, : | |
| : | CIVIL ACTION |
|    v. : | |
| : | NO. 08-2176 |
| LASON, INC., HOV SERVICES LIMITED, and BAY : | |
| AREA CREDIT SERVICE, : | |
|    Defendants. : | |

## Memorandum and Order

YOHN, J.                                                                                                  October 21, 2008

Plaintiff PSC Info Group ("PSC") brings this diversity suit against defendants Lason, Inc. ("Lason"), HOV Services Limited ("HOV"), and Bay Area Credit Services, Inc. ("Bay Area"). PSC alleges claims for breach of contract and tortious interference with existing and prospective contractual relations. Presently before the court is defendants' motion to dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, I will deny the motion as to all claims against defendants HOV and Bay Area. I will grant the motion as to the breach of contract claim against defendant Lason and deny the motion as to the tortious interference claim against defendant Lason. PSC's breach of contract claim, as to defendant Lason, will be dismissed with prejudice.

**I.**     **Background**

Taking the allegations in the complaint to be true, as I must in considering this motion to dismiss, the facts are as follows: PSC, a data and document management company, is a

corporation organized under the laws of the State of Delaware, with its principal place of business in Pennsylvania. (Compl. ¶ 1.) In the course of its business, PSC provides printing, mailing, and sorting services to debt collection agencies. (*Id.* at ¶ 12.) Bay Area is a debt collection agency organized as a corporation under the laws of the State of Colorado, with its principal place of business in Colorado. (*Id.* at ¶ 4.) Bay Area is a wholly-owned subsidiary of HOV, which is a corporation organized under the laws of the State of Michigan with its principal place of business in Michigan. Lason is a corporation organized under the laws of the State of Michigan with its principal place of business in Michigan. (*Id.* at ¶ 3.) Lason is PSC's competitor. (Compl. ¶ 18.) In the course of the events leading to this litigation, Lason was acquired by and became a wholly-owned subsidiary of HOV. (*Id.* at ¶¶ 3, 18.)

On or about May 31, 2006, Bay Area entered into a contract with PSC under which PSC agreed to provide automated services for several aspects of Bay Area's collection business. (*Id.* at ¶¶ 13, 15.) Services provided under the contract included "data and document management, printing, sorting, bursting, folding, inserting, mailing, stamping and tracking statements." (*Id.* at ¶ 14.) The contract stated that "PSC will become [Bay Area's] exclusive agent for the purposes described herein." (Compl. Ex. A at 1.)[1] Bay Area was to be charged on a per-document basis. (*Id.* at 1, 3.) The contract initially set pricing at $0.397 per document for a 120-day period. (*Id.*

---

[1] PSC filed a copy of the contract as "Exhibit A" to its complaint. The contract was also part of PSC's "Exhibit B," which included other supporting documentation as well. PSC refers to these materials in its complaint, and I treat the language of the contract as part of the facts alleged in the complaint for purposes of the motion presently before the court. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In doing so, I note that some language in the contract appears contrary to or incompatible with PSC's allegations in its complaint. As discussed below, however, these apparent incompatibilities are immaterial to the present ruling.

at 3.)  PSC and Bay Area "anticipated" a processing volume of 400,000 documents per month. (Compl. ¶ 16.)  The contract also included a volume-based pricing matrix which, after the initial 120-day period, would apply "[i]f monthly volume does not meet estimated projections."[2] (Compl. Ex. A at 3.)

PSC implies in its complaint (Compl. ¶¶ 10, 16, 22) and explicitly states in its response to defendants' motion to dismiss that "the parties expressly agreed that Bay Area would provide 400,000 [documents to be processed] monthly."  (Pl.'s Mem. of Law in Opp'n to Defs.'s Mot. to Dismiss at 3.)[3]  PSC calculates that "400,000 pieces per month . . . would translate into monthly revenue . . . of $175,000 or $2,356,920 per year."  (Compl. ¶ 22.)  The contract was to cover a period of one year, but it would "automatically renew for consecutive one-year terms unless either party notifie[d] the other party, in writing, of their [sic] intention not to renew within 90 days of the end of the currently expiring term."  (Compl. Ex. A at 1.)  Bay Area never provided 400,000 documents per month; rather, Bay area transmitted only 811,547 documents to PSC between May 2006 and July 2007.  (Compl. ¶ 16; Compl. Ex. B at 6.)

Shortly after PSC and Bay Area entered into their contract, Bay Area's parent company, HOV, acquired PSC's competitor, Lason.  (Compl. ¶ 18.)[4]  PSC attributes the lower-than-expected volume of documents it received under the contract to the Lason acquisition.  (*Id.*)  PSC alleges that HOV and Lason tortiously interfered with its Bay Area contract "by conspiring

---

[2] The pricing matrix defines a multi-tiered, volume-based discounting regime: the greater the monthly volume of documents processed, the lower the price charged per document.

[3] The language of the contract does not seem to support this allegation or any "guarantee" of a minimum number of documents.

[4] In defendants' brief, they allege this occurred on March 1, 2007.

amongst themselves to cause . . . Bay Area to transfer all of its printing and mailing work to . . . Lason." (*Id.* at ¶ 21.) PSC also alleges that Bay Area, HOV, and Lason breached the contract with PSC "by failing to deliver to PSC data for processing" and failing "to pay for services performed by PSC." (*Id.* at ¶ 27.) Moreover, PSC alleges that "[d]efendant HOV are [sic] also liable for breach of contract under the 'Alter Ego' theory." (*Id.* at ¶ 29.)

The PSC-Bay Area contract also provides that "[a]ny claim arising out of or related to this Agreement must be brought no later than 6 months after it has accrued." (Compl. Ex. A at 2.) The contract does not, however, define accrual. In or around July 2007, Bay Area "began to become delinquent on their payments, yet represented to . . . PSC that they would pay their bills in full."(Compl. ¶ 19.) By August 2007, Bay Area completely ceased its use of PSC's services. (Compl. Ex. B at 6.) Nevertheless, not until May 10, 2008 did PSC commence this action, alleging that it had suffered damages in excess of $2,015,451.67. (Compl. ¶ 22, Compl. at 9.) PSC argues that it commenced this litigation "within three months" of learning of the Lason acquisition, explaining that "it was only then . . . that PSC realized that Bay Area had almost certainly breached the exclusivity provisions of the contract." (Pl.'s Mem. of Law in Opp'n to Defs.'s Mot. to Dismiss at 8.)

## II.  DISCUSSION

### A.  Rule 12(b)(6) Standard

When deciding whether to dismiss a claim pursuant to Rule 12(b)(6), the court is testing the sufficiency of a complaint. *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980). The court must accept as true all well-pleaded allegations of fact in the complaint as well as any "reasonable inferences that can be drawn therefrom." *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir.

1996).

"'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)) (internal citation omitted). A plaintiff must show a "plausible" claim to relief, *Twombly*, 127 S. Ct. at 1974, or "reasonably founded hope" of success. *Id*. at 1969 (internal quotation marks and citations omitted). "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

PSC's complaint includes two causes of action—breach of contract and tortious interference—and names three defendants. Because all defendants have moved jointly to dismiss the entire complaint, the court will address each cause of action as against each defendant.

**B. Count I: Tortious Interference with Existing and Prospective Contractual Relations**

In Pennsylvania, the tort of tortious interference with contractual relations consists of the following elements:

> (1) the existence of a contractual, or prospective contractual relation between the complainant and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual legal damage as a result of the

defendant's conduct.

*CGB Occupational Therapy v. RHA Health Servs.*, 357 F.3d 375, 384 (3d Cir. 2004).

### 1. Defendant Bay Area

PSC does not assert a cause of action for tortious interference against Bay Area, and wisely so because the first element of tortious interference requires a contract between the complainant and a third party. "It is . . . settled Pennsylvania law that . . . a party cannot be liable for tortious interference with a contract to which [it] is a party." *Michelson v. Exxon Research & Eng'g Co.*, 808 F.2d 1005, 1007-08 (3d Cir. 1987).

### 2. Defendants HOV and Lason

Defendants do not dispute the presence of the first element of tortious interference: the existence of a contract between PSC and Bay Area. PSC has pleaded facts that satisfy the second element of tortious interference. Specifically, PSC has alleged that HOV and its subsidiary, Lason, acted to deprive PSC of business from Bay Area—business for which PSC had contracted to be Bay Area's "exclusive agent." Defendants focus on the third and fourth elements of tortious interference, arguing that PSC has failed to plead a cause of action for tortious interference because PSC: (1) did not allege that HOV's and Lason's conduct was not privileged and (2) has not suffered actual damages.

Defendants correctly assert that in Pennsylvania "[t]he presence of a privilege is not an affirmative defense, rather, the absence of such a privilege is an element of the cause of action which must be pleaded and proven by the plaintiff." *Bahleda v. Hankison Corp.*, 323 A.2d 121, 122-23 (Pa. Super. Ct. 1974). Apparently, however, defendants place too much importance on the presence or absence of "magic words" in the complaint. Although PSC's complaint does not

explicitly state that HOV's and Lason's alleged conduct was not privileged, the complaint does lay out facts sufficient to put defendants on notice that PSC believes and will argue that defendants' conduct was not privileged.

The Supreme Court of Pennsylvania has stated that "[w]hat is or is not privileged conduct in a given situation is not susceptible of precise definition." *Alder, Barish, Daniels, Levin and Creskoff v. Epstein*, 393 A.2d 1175, 1183-84 (Pa. 1978). Rather, Pennsylvania courts ask whether conduct is "sanctioned by the 'rules of the game' which society has adopted." *Id.* at 1184 (internal citation and quotation omitted). In examining privilege, Pennsylvania law also looks to the Restatement (Second) of Torts § 767, which lists factors relating to whether conduct is "improper." *Id.*; *see also InterVest, Inc. v. Bloomberg, L.P.*, 340 F.3d 144, 168 n. 10 (3d Cir. 2003); *Green v. Interstate United Mgmt. Servs. Corp.*, 748 F.2d 827, 831 (3d Cir. 1984).[5]

Pursuant to the spirit of notice pleading enshrined in Federal Rule of Civil Procedure 8(a), generally a complaint need only state "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993). PSC alleges "the nature of the interfering conduct itself," *Total Care Sys., Inc. v. Coons*, 860 F. Supp. 236, 242 (E.D. Pa.

---

[5] The § 767 factors include:
(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference and (g) the relations between the parties.

Restatement (Second) of Torts § 767 (1979). It should be noted that the Restatement (Second) refers to the *propriety* of conduct rather than to whether conduct is *privileged*. Pennsylvania courts, however, have used these factors when analyzing privilege.

1994), and alleges that HOV and Lason "conspir[ed] amongst themselves to cause . . . Bay Area to transfer all of its printing and mailing work to . . . Lason, despite the [contract] between . . . PSC and . . . Bay Area."  (Compl. ¶ 21.)  Under the § 767 factors, and in light of the standard of review for Rule 12(b)(6) motions, the court is satisfied that PSC has alleged "enough factual matter (taken as true) to suggest the required element" of lack of privilege.  *Phillips* 515 F.3d at 234 (internal quotation omitted).

      The allegations in the complaint were sufficient to put HOV and Lason on notice that PSC is alleging that their conduct was not privileged.  To dismiss PSC's tortious interference claim at this stage would not only violate the spirit of Rule 8(a), but would also be an "instance of judicial haste which in the long run makes waste."  *Dioguardi v. Durning*, 139 F.2d 774, 775 (2d Cir. 1944).  Accordingly, viewing the pleaded allegations in the light most favorable to PSC, the court finds that PSC has sufficiently alleged the third element of tortious interference.

      Defendants also argue that PSC fails to allege the fourth element of tortious interference: that it suffered actual damages.  The court disagrees.  Paragraph I of the contract between PSC and Bay Area states that PSC was to be Bay Area's "exclusive agent for the purposes described" in the contract.  As previously mentioned, PSC alleges that defendants diverted Bay Area processing work, to which PSC was contractually entitled, to Lason.  This diversion allegedly led to a lower volume of work for PSC and, consequently, diminished revenues.  Again viewing the pleaded allegations in the light most favorable to PSC, the court is satisfied that PSC has sufficiently alleged actual damage.  Because PSC alleges facts supporting all required elements of tortious interference, it has stated a cause of action upon which the court may grant relief.  Accordingly, the court denies defendants' motion to dismiss the tortious interference claim

against HOV and Lason pursuant to Federal Rule of Civil Procedure 12(b)(6).

### C. Count II: Breach of Contract

#### 1. Limitations Period

Defendants argue that PSC's breach of contract claim is time-barred, as to all defendants, by the six-month limitations period included in paragraph XII of the contract, which states, in relevant part: "Any claim arising out of or related to this Agreement must be brought no later than six months after it has accrued."[6] The contract, however, is silent as to when accrual occurs. In the absence of a contractual provision addressing accrual, the court will apply ordinary Pennsylvania law when analyzing accrual.

Pennsylvania has a four year statute of limitations for most actions founded in contract. 42 Pa. Cons. Stat. § 5525 (2006). Yet, parties to a contract may, by written agreement, agree to "a shorter time which is not manifestly unreasonable." *Id.* § 5501(a). The parties disagree as to whether the six-month limitations period in paragraph XII meets the "not manifestly unreasonable" standard of § 5501(a). The court, however, need not address that issue at present because I find that, even under the six-month limitations period from paragraph XII, the court cannot dismiss the breach of contract claim as time-barred at this point in the proceedings.

Viewing the facts and drawing inferences in the light most favorable to PSC, the court cannot say that PSC's breach of contract claim was untimely under paragraph XII. Defendants argue that PSC's claim for breach of contract accrued, at the latest, in July 2007. (Defs.'s Mem. of Law in Supp. of Defs.'s Mot. to Dismiss at 26.) In contrast, PSC argues that, pursuant to the

---

[6] Since HOV and Bay Area were not parties to the contract, the shortened limitations period would not apply to them except perhaps for a successful alter ego liability claim.

discovery rule, the claim accrued when PSC learned of the Lason acquisition, which was at most three months before it commenced this action. (Pl.'s Mem. of Law in Opp'n to Defs.'s Mot. to Dismiss at 8.) As the Supreme Court of Pennsylvania has stated:

> The discovery rule is a judicially created device that tolls the running of the applicable statute of limitations until the point where the complaining party knows or reasonably should know that he has been injured and that his injury has been caused by another party's conduct. The complaining party must use reasonable diligence to discover the cause of an injury.

*Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.*, 842 A.2d 334, 344 n. 8 (Pa. 2004). Contrary to defendants' assertions, "Pennsylvania recognizes the discovery rule . . . in breach of contract actions." *Id.* at 344.

Parties to a contract can agree to abrogate the discovery rule for purposes of disputes that may arise between them. *See Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.*, 892 A.2d 830, 836 (Pa. Super. Ct. 2006) (finding that contractual language that defined when a cause of action accrued "preclude[d] application of the discovery rule"). But, the PSC-Bay Area contract did not include a clause that defines accrual or otherwise abrogates the discovery rule. Thus, PSC may properly argue that its action is timely under the discovery rule.

The Supreme Court of Pennsylvania has stated that "the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors." *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000) (internal quotation and citation omitted). When dealing with the discovery rule, "only where the facts are so clear that reasonable minds *cannot differ* may the

commencement of the limitations period be determined as a matter of law." *Id.* (emphasis in original). Because the facts are not so clear in the present case, the court cannot dismiss the breach of contract claim as untimely.[7]

### 2. Defendant Bay Area

Defendants assert that the court should dismiss the breach of contract claim against Bay Area, arguing that PSC has failed to allege that Bay Area breached any contractual duty that it may have owed to PSC. The court disagrees. Bay Area asserts that its contract with PSC did not establish a mandatory monthly minimum of documents to be processed (Defs.'s Mem. of Law in Supp. of Defs.'s Mot. to Dismiss at 16-21.) Although the language of the PSC-Bay Area contract supports that assertion, defendants have ignored the exclusivity provision of the contract. Paragraph I of the contract states: "PSC will process . . . all collection letters . . . produced by [Bay Area] and any designated affiliates" and "PSC will become [Bay Area's] *exclusive agent* for the purposes described herein." (Compl. Ex. A at 1) (emphasis added).

Through both the complaint and the documents attached as exhibits thereto, PSC alleges that Bay Area breached the contract not only by failing to satisfy an alleged mandatory monthly minimum but also by violating the exclusivity provision. Even if defendants are correct, as the contract appears to indicate, in their assertion that the contract did not establish a mandatory monthly minimum, PSC may still be able to prove breach of the exclusivity provision. Given the standard of review for motions pursuant to Rule 12(b)(6), the court cannot conclude that PSC has

---

[7] PSC advances other arguments for the timeliness of its claim, including the argument that defendants were in continuous breach of the contract throughout its period of effect, lasting until May 2008. Given the preceding analysis, the court need not address those arguments at this time.

failed to state a claim for breach of contract. Defendants' motion to dismiss Count Two must therefore be denied as to defendant Bay Area.

### 3. Defendant HOV

Defendants rightly point out that HOV was not a party to the PSC-Bay Area contract. As such, HOV could not normally bear liability for actions arising out of that contract. PSC has alleged, however, that HOV is "liable for breach of contract under the 'Alter Ego' theory." (Compl. ¶ 29.) Although corporations are generally treated as fictitious entities, separate from each other and their shareholders, in Pennsylvania "this legal fiction . . . will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudiced nor the theory of the corporate entity rendered useless." *Ashley v. Ashley*, 393 A.2d 637, 641 (Pa. 1978). The Supreme Court of Pennsylvania has further stated that "whenever one in control of a corporation uses that control, or uses the corporate assets, to further his or her own personal interests, the fiction of the separate corporate identity may properly be disregarded." *Id.* Under alter ego theory, Pennsylvania courts may, in appropriate circumstances, disregard the normal legal distinctions between corporate entities and "pierce the corporate veil." *See Botwinick v. Credit Exchange, Inc.*, 213 A.2d 349, 354 (Pa. 1965); *Advanced Tel. Sys., Inc. v. Com-Net Prof'l Mobile Radio, LLC*, 846 A.2d 1264, 1278 (Pa. Super. Ct. 2004). A parent corporation may be treated as the alter ego of its subsidiary if "the controlled corporation acted robot- or puppet-like in mechanical response to the controller's tugs on its strings or pressure on its buttons." *Cuthbert v. Amosa*, 898 F.2d 13, 15 (3d Cir. 1990).[8]

---

[8] The Pennsylvania Supreme Court has stated that factors to be considered when deciding whether to pierce the corporate veil include: "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate

PSC's only explicit reference to alter ego liability is terse indeed.[9]  However, especially when considering a motion to dismiss for failure to state a claim, the court will read this reference in the full context of the allegations contained within the complaint and supporting documentation.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007); *see, e.g.*, *Tyler v. O'Neill*, 944 F. Supp. 603, 615 (E.D. Pa. 1998).  PSC has alleged that it was the exclusive processor of Bay Area's collection letters; that Bay Area is a wholly-owned subsidiary of HOV; and that, contemporaneous to HOV's acquisition of PSC's competitor, Lason, Bay Area decreased the volume of letters it transmitted to PSC and ultimately ceased transmission entirely.  The motivations of Bay Area's behavior are unclear.  One could reasonably infer, as PSC evidently has, that HOV ordered Bay Area to reroute collection letters from PSC to Bay Area's new sibling company, Lason.  As stated above, when considering a Rule 12(b)(6) motion, the court must accept as true both the plaintiff's allegations and "reasonable inferences that can be drawn therefrom."  *Nami*, 82 F.3d at 65.  Whether Bay Area acted as HOV's "robot" or "puppet" is a question of fact, which cannot be properly decided at this procedural stage.  Accordingly, the court must deny defendants' motion as to the breach of contract claim against defendant HOV.

    **4. Defendant Lason**

In contrast to its allegation that HOV controlled Bay Area as an alter ego, PSC's complaint contains no such allegation to support a breach of contract claim against Lason.  As Lason was not a party to the PSC-Bay Area contract, the court finds no plausible basis for the

---

form to perpetrate a fraud." *Lumax Industries, Inc. v. Aultman*, 669 A.2d 893, 895 (Pa. 1995).

    [9] As noted earlier, PSC alleges "[d]efendant HOV are [sic] also liable for breach of contract under the 'Alter Ego' theory."  (Compl. ¶ 29.)

imposition of liability on Lason for breach of the contract. Accordingly, the breach of contract claim as against Lason will be dismissed.

### III.     CONCLUSION

As discussed in this Memorandum and Order, the court grants defendants' motion to dismiss as to the breach of contract claim against Lason. The court denies defendant's motion as to the tortious interference claim against HOV and Lason and as to the breach of contract claim against Bay Area and HOV.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PSC INFO GROUP, | : | |
|    Plaintiff, | : | CIVIL ACTION |
| | : | |
|    v. | : | NO. 08-2176 |
| | : | |
| LASON, INC., HOV SERVICES LIMITED, and BAY AREA CREDIT SERVICE, | : | |
|    Defendants. | : | |

# Order

YOHN, J.

    **AND NOW** on this 21st day of October 2008, upon consideration of defendants' motion to dismiss (Docket No. 17), plaintiff's response thereto, and defendants' reply, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to dismiss Count One is **DENIED**.

2. Defendants' motion to dismiss Count Two is **DENIED** as to defendants Bay Area Credit Services, Inc. and HOV Services Limited.

3. Defendants' motion to dismiss Count Two is **GRANTED** as to defendant Lason, Inc.  Count Two of the Complaint is **DISMISSED**, as against defendant Lason, Inc., with prejudice.

s/ William H. Yohn Jr., Judge
William H. Yohn Jr., Judge
