IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PSC INFO GROUP | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LASON, INC., et al. | : | NO. 08-2176 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE                             July 21, 2009

    On May 19, 2009, I issued an Order requiring each side in this contract dispute to produce certain documentation in response to discovery requests. Among other information, I ordered Defendants to produce information regarding the volume of letters sent out by Imperial, Lason, HOV, and Superior ("the Lason entitites") on behalf of Bay Area Credit Services ("BACS") over the alleged contract period of May 31, 2006, through May 31, 2008 ("the contract period"), and test files or sample letters sent by BACS to PSC, Lason, Superior or Imperial during the contract period.

    On June 25, 2009, Plaintiff filed a Motion for Sanctions, arguing that Defendants have failed to comply with my May 19 Order. Federal Rule of Civil Procedure 37(b) permits the court to impose sanctions for a party's failure to obey a discovery order. Although the Rule discusses sanctions as harsh as rendering a default judgment, see Fed.

R. Civ. P. 37(b)(2)(A)(vi), Plaintiff seeks only a monetary sanction and further order directing the requested discovery to be produced at this time.[1]

## I.  DISCUSSION

### A.  Volume of Letters and Sample Letters

Plaintiff argues that Defendants "absolutely and unequivocally failed to produce the volume of letters sent out by Superior and Imperial during the contract period and a list of test files or sample letters that they sent to PSC, Lason, Superior and Imperial during the contract period." Pl.'s Memo. at 2.[2] Defendants have responded that they have produced all the responsive documentation that they have. In addition, Defendants have produced information regarding BACS' use of two printing and mailing businesses not affiliated with the Defendants. See Exh. B, attached to Def.'s Resp.

Plaintiff seems to read my Order to require the Lason entities to disclose the volume of all letters they sent during the contract period -- not limited to letters sent on behalf of BACS. See Pl.'s Mot. at 2, Pl.'s Reply at 1-2. This is not the case. If Plaintiff refers back to the discovery requests presented to this court, the error in its argument is made clear. Plaintiff requested that "Bay Area Credit Service must provide a statement as

---

[1] Because I conclude that Defendants have complied with my prior discovery Order, I find no reason to address the factors governing the imposition of sanctions. See Poulis v. State Farm Fire and Casualty Co., 747 F.2d 862, 868 (3d Cir. 1984).

[2] It does not appear that Plaintiff takes issue with the discovery responses produced with respect to the other Lason entities. From the documentation attached to Defendants' response, it appears that Defendants produced invoices from Lason prior to my Order. See Def.'s Resp., at Exh. A.

2

to how many letters were sent out from May 31, 2006 through May 31, 2008 - it must be inclusive - and must include Imperial, HOV, Superior, et al. - all of their entities." See Letter of Hurd, 4/29/09.[3] To the extent Plaintiff seeks the volume of letters sent by the Lason entities for clients other than BACS, the information is irrelevant. The contract in this case was between PSC and BACS. The relevant question is whether BACS funneled its business away from PSC to the other Lason entities during the contract period. All other business processed by the Lason entities is irrelevant.

There is one area where I find that some confusion is justified. I ordered Defendants to produce documentation regarding the volume of letters sent by BACS to any of the Lason entities during the contract period. In the cover letter forwarding responsive information, Defendants stated, "Neither Imerial [sic] nor BACS sent letters to Superior during the contract period." Letter of Hurd, 6/18/09, attached to Def.'s Resp. at Exh. B. Although this provides an answer to the volume of letters BACS sent to Superior (none), it does not answer the question of the volume of letters BACS sent to Imperial.[4]

In responding to the Motion for Sanctions, Defendants state that they "do not believe that Imperial ever sent any letters for BACS." Def.'s Resp. at 2. With this response, I believe Defendants have fully complied with the portion of my Order

---

[3]Although the letter was authored by defense counsel, there was no objection to the scope of the request at the conference held with both counsel on May 18, 2009.

[4]Defendants also provided information and documentation regarding BACS use of other printing/mailing services that are unaffiliated with Lason.

3

dedicated to the documents evidencing the volume of letters set by BACS to the Lason entities.

Similarly, defense counsel has informed Plaintiff that Defendants have produced all documents regarding test files and letter samples sent to PSC and other mailing entities during the contract period. See Letter of Hurd, 6/18/09, attached to Def.'s Resp., at Exh. B. Plaintiff has offered this court no reason to doubt the veracity of Defendants' statements that no other responsive documents exist or that Imperial and Superior did not process mailing on behalf of BACS. Thus, I conclude that Defendants have fully complied with the portion of my Order addressing the volume of letters sent out by the Lason entities on behalf of BACS during the contract period and the production of sample letters. There is no basis for sanctions.

### B. Meeting Minutes

After filing its Motion for Sanctions, Plaintiff filed a supplement based on the deposition testimony of James Reynolds, the Chief Financial Officer of HOV. In my May 19 discovery Order, I directed Defendants to produce any meeting minutes for HOV Services, LLC, HOV Services, LTD, BACS, Lason, Inc., or Rustic Canyon, III LLC, that referred to the merger and/or acquisition of Lason by HOV. In his June 18, 2009 letter, defense counsel stated that there are no meeting minutes which refer to the merger and/or acquisition of Lason by HOV. See Letter of Hurd, 7/18/09, attached to Def.'s Resp., at Exh. B. Thereafter, at his deposition, Mr. Reynolds testified that "[t]here were minutes

and resolutions filed with the Indian Stock Exchanges." Reynolds Dep., at 15. Plaintiff's counsel terminated the deposition and informed the court of "the latest obstruction to discovery by Defendants." Letter of Shullick, 6/30/09.

The following day, defense counsel informed the court that Mr. Reynolds had erred in his deposition testimony. The documents to which he was referring at his deposition were an announcement and press release, which had previously been produced. In responding to the Motion for Sanctions, Mr. Reynolds has provided an affidavit to that effect. See Affidavit of Reynolds, attached to Def.'s Resp. at Exh. D. Thus, I find no discovery dispute and no basis for sanctions.

### C. Defendants' Request for Sanctions

In responding to the Plaintiff's Motion for Sanctions, Defendants have requested sanctions themselves based on Plaintiff's counsel's failure to confer in good faith prior to filing the Motion for Sanctions, and certifying that he had, and for abusing the discovery process. I decline to do so at this point.

Local Rule of Civil Procedure 26.1(f) requires that any motion regarding discovery be accompanied by a certification of counsel that the parties, after reasonable effort, were unable to resolve the dispute. Here, Defendants complain that Plaintiff, specifically Plaintiff's counsel, did not make a reasonable effort to resolve this dispute before filing a motion with the court.

As previously stated, I can understand Plaintiff's confusion regarding the response to the discovery request for the volume of letters sent by Superior on behalf of BACS. However, I think Plaintiff's counsel could have sought clarification before resorting to a motion to the court. To the extent he continues to believe that Defendants have failed to produce all responsive documents or information, I have no basis for such a conclusion. Similarly, with respect to Mr. Reynolds' deposition, clearly an open line of communication between counsel would have resolved the issue in a much more productive fashion.

Defendants complain about Plaintiff's counsel's abuse of the discovery process -- threatening sanctions and terminating depositions to intimidate witnesses and interrupting depositions to give his own testimony. Not to be outdone, Plaintiff's counsel complains about the tactics employed by his adversary -- misrepresenting Plaintiff's position with respect to an extension when defense counsel knew Plaintiff's counsel was on vacation at the time of the correspondence. See Pl's Mot. at 2. Counsel would both be best advised to heed the words of the late Honorable Robert Gawthrop III:

> Sometimes, there is a fine line between mudslinging, and impeachment through vigorous advocacy. I condone and, indeed, welcome the latter; but the lawyer who tries too much of the former in this [case] could soon well find himself up to his ears in quicksand. With a sinking sensation.

Swarthmore Radiation Oncology, Inc. v. Lapes, No. 92-3055, 1994 WL 95114, at *2 (E.D. Pa. Mar. 10, 1994). Future motions filed without reasonable communication

between counsel or filings peppered with animosity toward the adversary will not be met as kindly as this one.

      An appropriate Order follows.